IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
: 
TYSON COLEMAN,                             :  CIVIL ACTION
         Petitioner            :
:
:
   v.                                      :  NO. 12-2725
:
DEBRA SAUERS, et al.,                      :
         Respondents           :
_____:

**Henry S. Perkin, M.J.**                                              **July 26, 2012**

**REPORT AND RECOMMENDATION**

       Presently before the Court is a Petition for Writ of Habeas Corpus filed by the Petitioner, Tyson Coleman ("Petitioner"), pursuant to 28 U.S.C. section 2254. Petitioner is currently incarcerated in the State Correctional Institution in Marienville, Pennsylvania. For the reasons that follow, it is recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

**I.      PROCEDURAL HISTORY**.[1]

       On April 12, 2005, following a jury trial before the Honorable Jane Cutler Greenspan in the Court of Common Pleas of Philadelphia County, Petitioner was found guilty of murder in the first degree and possessing an instrument of crime.[2]  On June 7, 2005, Judge

---

[1]    This information is taken from the Petition for Writ of Habeas Corpus and memorandum in support thereof, the Response thereto, and the attachments to those pleadings. In addition, this Court ordered and reviewed the state court record pertaining to this matter. The information contained in the state court record has been considered and incorporated into this Report and Recommendation.

[2]    The state courts set forth the following relevant facts:

> On August 15, 2003, decedent Charles Graham went to a bar where he met with [Petitioner] and Eric Clemonts. Mr. Clemonts and Charles Graham soon began joking with and teasing [Petitioner]. Charles Graham told [Petitioner], "You

have a lot of animosity." [Petitioner] did not respond to the statement. The three men left the bar, met up with another friend, James Graves, and the four men eventually ended up at the Starlight Ballroom (an after-hours club) around 3:15 a.m.

As the four men . . . were walking into the club, [Petitioner] told Mr. Clemonts that "Charlie takes him for a joke." Once inside the club, Charles Graham slept most of the time in a small booth. The men decided to leave the club around 4:00 a.m. because everyone was tired.

On their way out of the Starlight Ballroom, [Petitioner] and Charles Graham had a small argument, but nothing to "alarm" or make one "think that these guys are going to get into a fight or any type of altercation." Upon exiting the club[,] James Graves and Eric Clemonts stopped outside to talk with four ladies they knew. [Petitioner] climbed into the front seat of Mr. Clemonts' white Range Rover. Charles Graham got into the backseat of the car and tried to go to sleep.

[Petitioner] then got out of the car, and began pointing his fingers in Charles Graham's face and talking to him through the car's rear window. Soon Mr. Graham got out of the car, and the two males stood in the street with their fists at shoulder level, in a fighting stance.

Mr. Graves and Mr. Clemonts continued to speak with the ladies while [Petitioner] and Mr. Graham's argument escalated. When one of the ladies told Mr. Clemonts to look, Mr. Clemonts turned around and saw "[Petitioner] and Charlie locked up as if they were like boxers." As Mr. Clemonts ran towards the men, [Petitioner] pushed off of Charles Graham, in a bench press type maneuver, shoving the decedent with both arms at chest level. As [Petitioner's] right arm moved away from Mr. Graham, Charles Graham fell, face-first, to the ground.

When Mr. Graves turned around, he saw Charles Graham lying on the ground, with [Petitioner] standing very close to him. Mr. Clemonts ran to Mr. Graham who was lying motionless, face-first on the ground, and bleeding from his neck area. There was also blood coming from a stab wound to the upper part of Mr. Graham's shoulder. Mr. Clemonts smacked Mr. Graham on the face and attempted to get him off the ground. He noticed a small cut around Mr. Graham's neck. Mr. Clemonts tried to speak with Mr. Graham, but Mr. Graham did not respond.

[Petitioner] got into the car and waited as Mr. Clemonts continued unsuccessfully to communicate with Mr. Graham, who remained motionless and speechless on the ground. Mr. Clemonts became "hysterical after seeing Charlie not moving and with a cut near the throat section." Mr. Clemonts began crying, and asked [Petitioner] "what did you do," to which he received no response. At that point an ambulance was called.

Mr. Clemonts and Mr. Graves then returned to the car and Mr. Clemonts continued to ask [Petitioner] what he had done. [Petitioner's] only response was a request to be taken home. While driving [Petitioner] home, Mr. Clemonts saw that [Petitioner] was holding a knife with about three inches of the knife handle

Greenspan sentenced Petitioner to an aggregate term of life imprisonment.

Petitioner filed a direct appeal from the judgment of sentence in the Superior

---

> visible. [Petitioner] also had blood on the chest and abdominal area of his shirt — enough blood that "it was noticeable." Mr. Clemonts asked [Petitioner], "Is that what you did? What, are you crazy? Did you stab him?" To which [Petitioner] replied, "Yes... that's how you know how I get down. What that means where we come from, I'm capable of anything."
>
> They arrived at [Petitioner's] house, and as [Petitioner] was getting out of the car[,] he told Mr. Clemonts, "you know how I get down. I shanked him." The term "shank" was used to mean to "cut somebody, stab them." As he got out of the car, a portion of the handle of the knife was still visible in [Petitioner's] hand.
>
> At approximately 4:52 a.m. on the morning of August 16, 2003, police received a radio call for a hospital case at the 400 block of North 9th and Callowhill Street. Officer Bernadette McCafferty testified that upon arriving at the scene she found Charles Graham lying face down with a great deal of blood coming out of his upper body. Officer McCafferty attempted to wake Mr. Graham, but received no response. She pulled Mr. Graham's shoulder back and saw lacerations on the rear side of his shoulder, and that he was bleeding from his neck. The medic arrived and pronounced Charles Graham dead at the scene.
>
> Dr. Edwin Lieberman, a forensic pathologist, performed a postmortem examination of Charles Graham on August 16, 2003. According to Dr. Lieberman, there were multiple "sharp force" injuries on Mr. Graham's body, the majority of which were stab wounds. There was a stab wound to the chest caused by a single edged knife with a blunt edge to it. The knife had been plunged through the breast bone, which required a great deal of force. The knife proceeded to go through the decedent's breast bone, pericardial sac (the sac that surrounds the heart), right ventricle of his heart, and his diaphragm. The blade also nicked the left lobe of his liver and caused some hemorrhaging to the soft tissue around his spleen. There was also an incise wound on Mr. Graham's neck caused by a sharp implement. In total, Mr. Graham suffered from twelve stab wounds, two incised wounds, blunt force injury to the lips, and a scrape or blunt force injury to the back of his right forearm near the wrist area. Dr. Lieberman concluded that the cause of Mr. Graham's death was his multiple stab wounds, particularly the wounds to his heart and neck, and the manner of his death was homicide.
>
> Mr. Graves and Mr. Clemonts were both interviewed on August 16, 2003, around 3:40 p.m. inside the Philadelphia Police Department Homicide Division where they made statements to police, each identifying [Petitioner] as the man who stabbed and killed Charles Graham. A warrant for [Petitioner's] arrest was subsequently issued by the Bail Commissioner. On November 13, 2003, [Appellant] was arrested after first attempting to flee from an approaching police officer and resisting arrest.

Commonwealth v. Coleman, 915 A.2d 139 (Pa. Super. 2006) (table) (No. 1783 EDA 2005); Response, Ex. B at 1-4.

Court of Pennsylvania.[3]  By memorandum decision dated November 1, 2006, the Superior Court denied Petitioner's direct appeal and affirmed the judgment of sentence.  Commonwealth v. Coleman, 915 A.2d 139 (Pa. Super. 2006) (table) (No. 1783 EDA 2005); Response, Ex. B. Petitioner filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on March 29, 2007.  Commonwealth v. Coleman, 919 A.2d 954 (Pa. 2007) (table) (No. 570 EAL 2006); Response, Ex. C.

On March 7, 2008, Petitioner filed a *pro se* petition for collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA").  Counsel (Emily Cherniack, Esquire) was appointed, but after reviewing the record, counsel filed a "no merit" letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).  On December 21, 2009, the Honorable Benjamin Lerner dismissed the PCRA petition without a hearing.

Petitioner appealed to the Pennsylvania Superior Court.[4]  In a memorandum filed August 9, 2011, the Superior Court affirmed the PCRA court's dismissal of the PCRA petition,

---

[3]  Petitioner presented the following claims for review:

    I.    Whether or not the evidence was insufficient to sustain the guilty verdict?

    II.    Whether the [trial court] erred in failing to instruct the jury as to self-defense and voluntary manslaughter-unreasonable belief in self-defense?

    III.    Whether [Petitioner] received effective assistance of counsel?

Commonwealth v. Coleman, 915 A.2d 139 (Pa. Super. 2006) (table) (No. 1783 EDA 2005); Response, Ex. B at 5.

[4]  Petitioner's appeal proceeded after he secured the reinstatement of his right to do so *nunc pro tunc* and after the Superior Court remanded the case to permit the PCRA court to enter an order specifically ruling on PCRA counsel's motion for leave to withdraw from representation.  Commonwealth v. Coleman, 30 A.3d 544 (Pa. Super. May 23, 2011) (table) (No. 419 EDA 2010); Response, Ex. D.

concluding that the issues were meritless.[5]  Commonwealth v. Coleman, 32 A.3d 826 (Pa. Super. 2011) (table) (No. 419 EDA 2010); Response, Ex. E.  Petitioner did not seek further review by the Pennsylvania Supreme Court.

---

[5] As Respondents correctly note, the Superior Court denied the relief requested in Petitioner's thirteen claims and numerous sub-claims:

> In its lengthy opinion, the Court held that: (1) his sufficiency challenges were previously litigated and meritless; (2) his claim that the trial should have given a jury instruction on imperfect self-defense in addition to a "heat-of-passion" charge) was waived, previously litigated, and meritless; (3) there was no merit to his claim that the trial court should have declared a mistrial after a juror expressed fear for his personal safety because the trial court questioned the jurors extensively before proceeding with the trial; (4) the trial judge was not required to recuse herself based on supposed bias; (5) Petitioner was not entitled to relief based on his multiple, largely waived claims of trial counsel ineffectiveness, in particular that: (a) trial counsel was not ineffective for not calling character witnesses because prejudice could not be shown; (b) Petitioner had waived his ineffectiveness complaint alleging trial counsel's supposed lack of trial strategy by failing to preserve or develop the claim; (c) trial counsel was not ineffective for not requesting a mistrial based on supposed juror intimidation in the absence of any trial court error on this basis; (d) deficient performance or prejudice could not be found based on trial counsel's use of Commonwealth evidence concerning the crime scene; (e) counsel was not ineffective for not introducing irrelevant evidence relating to the metal detectors at the nightclubs visited by the Petitioner, the victim, and their friends on the night of the murder; (f) Petitioner failed to establish any deficiency in counsel's decisions not to request a voluntary intoxication instruction or introduce additional evidence of his level of intoxication and expert testimony on the subject; (6) direct appeal counsel was not ineffective for supposedly failing to raise baseless claim of trial counsel ineffectiveness — one actually litigated by appellate counsel — that counsel should have requested a mistrial based on alleged juror intimidation; (7) direct appeal counsel was not ineffective for not raising other claims of trial counsel ineffectiveness because they would have been premature at that stage; (8) Petitioner's constitutional rights were not violated by the police questioning of witnesses Graves and Clemonts together; (9) direct appeal counsel was not ineffective based on the simultaneous questioning of these two witnesses; (10) Petitioner failed to establish that the PCRA court did not consider his *pro se* response to the court's notice of its intention to dismiss his claims without a hearing; and (11) Petitioner's complaint regarding PCRA counsel's ineffectiveness was not preserved below, but in any event, her thorough Finley letter did not overlook any meritorious issues; (12) as previously noted, trial counsel was not ineffective for not seeking a voluntary intoxication instruction; and (13) there was no merit to his boilerplate claim attacking the effectiveness of all prior counsel.

Response at 3-5 (citations omitted).

Petitioner signed the instant habeas Petition on May 14, 2012 and it was docketed by the Clerk of Court on May 17, 2012.  Pursuant to the prison mailbox rule, this Court will consider the date of filing as May 14, 2012.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1997) (motion is deemed timely filed on date petitioner gave petition to prison officials to mail).  In his Petition, he alleges the following six claims: (1) ineffective assistance of trial counsel for failing to interview or call character witnesses (Petition at 8); (2) ineffective assistance of trial counsel for "failing to prepare and present a strategic trial defense" based on a remark by counsel to the court before opening arguments (Petition at 10); (3) ineffective assistance of counsel for failing to request a mistrial due to alleged intimidation by the victim's family of some of the jurors (Petition at 12); (4) ineffective assistance for not requesting a jury instruction on self-defense (Petition at 13-14); (5) ineffective assistance for failing to request a jury instruction on voluntary intoxication (Petition at 15(b)); and (6) ineffective assistance of trial counsel for not introducing evidence "of the victim's high level of alcohol and the effects it can produce" (Petition at 15(b)). The Petition asserts, without further explanation, that it is timely because "it is filed within (60) days of the date (March 20, 2012) of [the] new rule set forth in the United States Supreme Court ruling in Martinez v. Ryan, [132 S.Ct. 1309] (2012), which directly [a]ffects [P]etitioner's claims."  Petition at 17.

The case was assigned to the Honorable Stewart Dalzell, who referred it for preparation of a Report and Recommendation on May 30, 2012.  On June 4, 2012, the undersigned entered an Order directing that the Clerk of Quarter Sessions/Office of Judicial Support for the Court of Common Pleas of Philadelphia County forward copies of all records, including transcripts of notes of testimony at arraignment, pre-trial and suppression hearings,

trial, sentencing, and post-conviction hearings and appeals; all trial and appellate briefs and petitions, all pleadings, and all court opinions of proceedings in connection with this matter. The state court record pertaining to <u>Commonwealth v. Tyson Coleman</u>, Court of Common Pleas of Philadelphia County, CP-51-CR-1207721-2003, was received in chambers of the undersigned on June 18, 2012.

On July 12, 2012, Respondents filed a Response to Petition for Writ of Habeas Corpus. Respondents contend that the Petition is time-barred, and that the case should be dismissed with prejudice and without an evidentiary hearing. Having reviewed the documents of record in this case, as well as the entire state court record, we offer this Report and Recommendation.

**II.    DISCUSSION.**

    **A.    The Federal Habeas Corpus Petition at Issue is Statutorily Time-Barred.**

Petitioner's case must be decided pursuant to the terms of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which was enacted April 24, 1996. Pub.L. 104-132, 110 Stat. 1214. Section 104(2) of the AEDPA amended 42 U.S.C. section 2254, the statute under which this Petition was filed, requires that federal courts give greater deference to a state court's legal determinations. The AEDPA also amended 28 U.S.C. section 2244, to require that a strict one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.[6] However, if direct review of a

---

[6]    28 U.S.C. section 2244 requires that:

>   (d)(1)  A 1-year period of limitation shall apply to an application for a writ of
>   habeas corpus by a person in custody pursuant to the judgment of a State court.
>   The limitation period shall run from the latest of -

criminal conviction ended prior to the AEDPA's effective date, a prisoner has one year subsequent to the April 24, 1996 effective date to properly file a habeas action.  Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).  In this case, the applicable starting point to examine the limitation period is the latest date on which the judgment of sentence became final, either by the conclusion of direct review or the expiration of the time for seeking such review.  See 28 U.S.C. § 2244(d)(1).

Petitioner's judgment of sentence became final on June 27, 2007, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal and the time for seeking discretionary review with the United States Supreme Court expired.  See U.S. Supreme Court Rule 13 (allowing ninety days to file a petition for writ of *certiorari*); Kapral v. United States, 166 F.3d 565, 570-571 (3d Cir. 1999) (judgment of sentence becomes final at conclusion of direct review or expiration of time for seeking such review).   Accordingly, the one-year time limit for Petitioner to timely file a federal Petition for Writ of Habeas Corpus began on June 27,

---

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

2007.  In the absence of any statutory or equitable tolling, Petitioner, therefore, would have been required to file his federal habeas petition on or before June 27, 2008.  We note, however, that because the AEDPA's one-year statute of limitations is subject to both statutory and equitable tolling, we must examine whether the instant Petition may be considered timely filed under either concept.  28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir.), cert. denied, 540 U.S. 921 (2003) (holding AEDPA's time limit is subject to the doctrine of equitable tolling, a judicially crafted exception).

      B.     **The Federal Habeas Corpus Petition at Issue is Not Eligible for Statutory or Equitable Tolling**.

The AEDPA's one-year statute of limitations is subject to both statutory and equitable tolling.  28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir.), cert. denied, 540 U.S. 921 (2003) (holding AEDPA's time limit is subject to the doctrine of equitable tolling, a judicially crafted exception).

      1.  Statutory Tolling

We note initially that Petitioner is not entitled to a new, extended deadline for the AEDPA's limitation period pursuant to 28 U.S.C. § 2244(d)(1).  Petitioner does not allege, nor is there evidence to demonstrate that state action prevented the timely filing of his habeas action. 28 U.S.C. § 2244(d)(1)(B).  Second, the claims alleged in the Petition do not rely on a new rule of federal constitutional law of retroactive application.  28 U.S.C. § 2244(d)(1)(C).[7]  Finally,

---

[7] Although Petitioner asserts that Martinez v. Ryan somehow entitles him to a finding of timeliness, we agree with Respondents and conclude that Petitioner is ineligible for a recalculation of the AEDPA deadline pursuant to Section 2244(d)(1)(C).  Following Martinez, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise Strickland claims; (2) the prisoner's underlying Strickland claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the Strickland standard.  Martinez, 132 S.Ct. at 1315,

Petitioner has not made a showing that the factual predicate of his claims was not discoverable through the exercise of due diligence long ago. 28 U.S.C. § 2244(d)(1)(D).

With respect to Petitioner's PCRA filing, we note that the limitations period will be statutorily tolled for the time during which a "properly filed" application for state post-conviction or other collateral review is pending. See 28 U.S.C. § 2244(d)(2). However, if a PCRA petition is not timely filed, it is not considered properly filed in order to toll the AEDPA one-year statutory time period. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

Petitioner's PCRA petition was filed on March 7, 2008, during the running of the one-year habeas clock. Because 254 days of the one-year time period had elapsed, the clock was tolled with approximately 111 days remaining before expiration. See Fed.R.Civ.P. 6(a)(1). On August 9, 2011, Petitioner's PCRA petition was no longer pending when the Pennsylvania Superior Court dismissed it. Commonwealth v. Coleman, 32 A.3d 826 (Pa. 2011)(table)(No.

---

1318-1319. For several reasons, Martinez does not render the instant petition, or any of its claims, timely for Section 2244(d)(1)(C) purposes. See Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (timeliness of federal habeas petition is determined on a claim-by-claim basis, such that timeliness of one claim cannot render others timely merely by association).

Initially, we note that Martinez did not announce a new federal constitutional rule of law and does not discuss retroactivity. See Martinez, 132 S.Ct. at 1315 (expressly declining to decide constitutional questions). See also Adams v. Thaler, --- F.3d --- , 2012 WL 1415094 at *10 n.6 (5th Cir. Apr. 25, 2012) (rejecting similar new rule contention: "Martinez does not provide a basis for authorization under § 2244(b)(2)(A), as the Court's decision was an 'equitable ruling' that did not establish 'a new rule of constitutional law.'") (citing Martinez, 132 S.Ct. at 1319). Accord, e.g., Gabe v. United States, Nos. 412–cv145 & 405–cr-281, 2012 WL 2153946, at *1 (S.D.Ga. June 13, 2012) (same). Because Martinez did not purport to describe a constitutional right, let alone make it retroactively applicable, the alternate start date under Section 2244(d)(1)(C) cannot apply to render this Petition timely filed.

Second, Petitioner asserts that Martinez "directly [a]ffects [his] claims" but does not explain how this is so, when all of his federal claims were presented by himself proceeding *pro se* and adjudicated on the merits on PCRA appeal. Petition at 17. It is, therefore, unclear which of Petitioner's claims could be affected by the limited procedural default ruling set forth in Martinez for ineffective assistance of PCRA counsel (i.e., himself) when default is not at issue, much less why Martinez provides an alternative start date for the statutory limitations period as to any of his claims. Accordingly, we conclude that Petitioner is ineligible for a recalculation of the AEDPA deadline pursuant to Section 2244(d)(1)(C).

419 EDA 2010); Response, Ex. E.  As a result, the one-year statutory period resumed on August 9, 2011, and expired 112 days later on November 28, 2011.[8]  The present Petition was filed on May 14, 2012, nearly six months after the period of limitation expired.  It is statutorily time-barred.

       2.  Equitable Tolling

This Court must next examine whether the AEDPA statute of limitations should be equitably tolled to consider the Petition timely filed.  Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003)(citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617-618 (3d Cir. 1998)(citation omitted).  The limitation period will be equitably tolled when the principles of equity would make the rigid application of a limitation period unfair.  Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

Courts must be sparing in their use of equitable tolling.  Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).  In fact, the United States Court of Appeals for the Third Circuit has held that equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice."  United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)(citation omitted).  "The two general requirements for equitable tolling: (1) that 'the Petitioner has in some extraordinary way been prevented from asserting his or her rights;' and (2) that the petitioner has shown that 'he or she exercised reasonable diligence in investigating and bringing [the] claims.'"  Merritt v. Blaine, 326 F.3d

---

[8] Even if we were to include the thirty days that Petitioner presumably would have had for seeking state supreme court, his petition would still be untimely as it would have had to be filed by December 28, 2011.

157, 168 (3d Cir. 2003), citing Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).  Mere excusable neglect is not sufficient.  Miller, 145 F.3d at 618 (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997) and citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The Third Circuit has set forth the following three circumstances in which equitable tolling is permitted: (1) if the [Respondent] has actively misled the [Petitioner]; (2) if the [Petitioner] has in some extraordinary way been prevented from asserting his rights, or (3) if the [Petitioner] has timely asserted his rights mistakenly in the wrong forum.  Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001), cert. denied, 534 U.S. 944 (2001)(citing Jones, 195 F.3d at 159 (citations omitted)).  "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."  Fahy, 240 F.3d at 244.  The habeas petitioner bears the burden of demonstrating both his entitlement to equitable tolling and his due diligence.  Pace, 544 U.S. at 418; Cooper v. Price, 82 Fed.Appx. 258, 260 (3d Cir. 2003); Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982); United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001) (Van Antwerpen, J.).

In this case, we note at the outset, that Petitioner has failed to allege that some extraordinary circumstance prevented him from asserting his rights in a timely habeas corpus petition and has failed to demonstrate that he exercised reasonable diligence in investigating and bringing his claims.[9]  Merritt, 326 F.3d at 168.  In fact, Petitioner filed his first federal habeas

---

[9] We note, as do Respondents, that Petitioner's unelaborated mention of Martinez does not suggest the "rare" and "extraordinary" circumstances required for equitable tolling.  Martinez does not change the analysis in this case, and the Petition does not identify the kind of ineffectiveness by any counsel that could give rise to equitable tolling.  Response at 16-17.

corpus petition approximately seven years after his conviction became final.

Moreover, we note that in determining whether extraordinary circumstances exist to warrant the application of equitable tolling, this Court must also examine Petitioner's due diligence in pursuing the matter under the specific circumstances he faced.  Traub v. Folio, No. 04-386, 2004 WL 2252115, at *2 (E.D. Pa. Oct. 5, 2004) (citing Schleuter v. Varner, 384 F.3d 69 (3d Cir. 2004))(affirming dismissal of habeas petition as time barred and not entitled to equitable tolling because lengthy periods of time had elapsed following his conviction before he sought relief).  It is Petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely.  Id.

Under the circumstances of this case, Petitioner did not act in a reasonably diligent fashion because a reasonably diligent petitioner would have acted promptly to preserve his rights not only in the state court, but also in *this* Court.  Petitioner fails to allege any steps that he took to timely file the instant federal habeas petition.  None of the circumstances which warrant equitable tolling apply in this case to render the instant Petition timely.  Fahy, 240 F.3d at 244.  Accordingly, the Petition is statutorily time-barred.

**C.   Certificate of Appealability.**

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant Petition is time-barred.  It is statutorily barred, and neither statutory nor equitable

tolling apply to this Petition.

      For all of the above reasons, I make the following:

### RECOMMENDATION

      AND NOW, this 26th day of July, 2012, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Docket No. 1) should be DENIED with prejudice and DISMISSED without an evidentiary hearing. There is no probable cause to issue a certificate of appealability.

      The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to timely file objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Henry S. Perkin
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE